UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JACKSON HEWITT, INC., | : : : | |
| Plaintiff, | : : | **OPINION** |
| v. | : : | Civ. No. 13-00388 |
| DORIS DUPREE-ROBERTS, | : : | |
| Defendant. | : : : : | |

**Walls, Senior District Judge**

Plaintiff Jackson Hewitt, Inc. moves for default judgment against Defendant Doris Dupree-Roberts. Under Federal Rule of Civil Procedure 78, the motion is decided without oral argument and granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Jackson Hewitt is a Virginia corporation with its principal place of business in Parsippany, New Jersey. Compl. ¶ 1. It is a franchisor of income tax preparation businesses. *Id.* Defendant Doris Dupree-Roberts is a citizen and resident of Texas. *Id.* ¶ 2.

On or about December 30, 1999, Jackson Hewitt and Dupree-Roberts entered into Franchise Agreements TX 228 and TX 224. *Id.* ¶¶ 20, 27.  On the same day, Dupree-Roberts personally guaranteed her performance and obligations set out under the Franchise Agreements. *Id.* ¶¶ 7, 21, 28. These Franchise Agreements authorized Dupree-Roberts to operate Jackson Hewitt income tax preparation businesses for a 10-year term within a defined geographic area in

-1-

Texas designated by five zip codes. *Id.* At the end of the initial 10-year term, Dupree-Roberts

and Jackson Hewitt renewed both franchise agreements for an additional 10-year term. *Id.* ¶¶ 22,

29. On February 9, 2010, Dupree-Roberts again provided Plaintiff with a personal guaranty of

her performance and obligations under the renewed Franchise Agreement. *Id.* ¶¶ 23, 30.

On January 8, 2010, Jackson Hewitt signed a promissory note in favor of Dupree-

Roberts. *Id.* ¶ 35. According to the terms of the promissory note, all unpaid balances would

immediately become due to Jackson Hewitt upon termination of the Franchise Agreements. *Id.* ¶

36. Under the two Franchise Agreements, Dupree-Roberts was obligated to pay Jackson Hewitt

royalty fees, advertising fees, electronic filing fees and other fees determined as a percentage of

the "gross volume of business" at the franchised locations. *Id.* ¶ 37. Gross volume of business is

defined as "the total revenue and other consideration from the franchised business." *Id.*

On or about September 10, 2010, Jackson Hewitt terminated the first Franchise

Agreement, TX 228, citing Dupree-Robert's failure to meet performance standards. *Id.* ¶ 31. On

September 23, 2011, Jackson Hewitt terminated the second Franchise Agreement, TX 224, citing

Dupree-Robert's failure to make payments pursuant to the terms of the Franchise Agreement and

promissory note. *Id.* ¶ 45.  According to Jackson Hewitt Dupree-Roberts has failed to comply

with her post-termination obligations.  *Id.* ¶¶ 62-64.

Plaintiff alleges Dupree-Roberts is now operating a competing tax business under the

name "Roberts Insurance and Tax agency" at previous franchise location 11001 Fondren Road,

Suite C, Houston, TX 77096, in breach of her covenant not to compete found in Franchise

Agreement TX 224. *Id.* ¶¶ 57-58. Jackson Hewitt sent Dupree-Roberts a cease and desist letter

demanding she immediately cease operation of the competing tax business within the former

franchised territory and advising Dupree-Roberts that she was in violation of her post-

termination obligations under the TX 224 Franchise Agreement. *Id. ¶* 59.  Dupree-Roberts was unresponsive. *Id.*

Plaintiff filed the Complaint on January 18, 2013. Dupree-Roberts was served with a Summons and a copy of Plaintiff's Verified Complaint by regular and certified mail on March 21, 2013. ECF No. 4. Jackson Hewitt requested an Entry of Default on April 30, 2013 under Fed. R. Civ. P. Rule 55(a), which the Clerk granted on May 1, 2013. ECF No. 5. Throughout the litigation Dupree-Roberts has been unresponsive.

On May 10, 2013 Plaintiff moved for Default Judgment against Defendant for a failure to plead or otherwise defend. Mot. for Default ¶ 1; ECF No. 6. Jackson Hewitt seeks damages in the amount of $162,306.37 plus post-judgment interest. Mot. for Default ¶ 1. This amount is comprised of (1) $158,958.47 in monetary damages including interest; (2) $2,997.00 in attorneys' fees and; (3) $350.90 in costs. *Id.* Plaintiff also seeks to permanently enjoin Defendants in her various post-termination obligations found in the Franchise Agreements including an injunction from operating a competing tax preparation business at 11001 Fondren Road, Suite C, Houston, TX 77096 under the terms of the covenant not to compete. *Id.*

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). Because the entry of default prevents a plaintiff's claims from being decided on the merits, "this court does not favor entry of

defaults or default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194

(3d Cir. 1984). Accordingly, the Third Circuit has clarified that, while "the entry of default

judgment is left primarily to the discretion of the district court," this "discretion is not without

limits," and cases should be "disposed of on the merits whenever practicable." *Hritz*, 723 F.2d at

1181 (citations omitted). *See also $55,518.05 in U.S. Currency*, 728 F.2d at 194–95.

The Third Circuit considers three factors in determining "whether a default judgment

should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant

appears to have a litigable defense, and (3) whether defendant's delay is due to culpable

conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

In deciding a motion for default judgment, "the factual allegations in a complaint, other

than those as to damages, are treated as conceded by defendant." *DIRECTV, Inc. v. Pepe*, 431

F.3d 162, 165 (3d Cir. 2005). The court must, however, make "an independent inquiry into

'whether the unchallenged facts constitute a legitimate cause of action'" and must make an

"independent determination" regarding questions of law. *Days Inn Worldwide, Inc. v. Mayu &

Roshan, L.L.C.*, No. 06–1581, 2007 WL 1674485, at *4 (D.N.J. June 8, 2007).

## DISCUSSION

### I.    Jurisdiction

Before entering a default judgment as to a party "that has not filed responsive pleadings,

a district court has an affirmative duty to look into its jurisdiction both over the subject matter

and the parties." *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05–3452,

2008 WL 2967067, at *9 (D.N.J. July 31, 2008). A default judgment entered without personal

jurisdiction over the defendant is void. *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 436 (E.D.

Pa. 2006).

### A.      Subject Matter Jurisdiction

Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff Jackson Hewitt

is a Virginia Corporation with its principal place of business in New Jersey. Compl. ¶ 1.

Defendant Doris Dupree-Roberts is a Texas resident. *Id.* ¶ 2. The amount in controversy,

exclusive of interests and costs, exceeds the sum of $75,000. *Id. ¶* 3.

### B.      Personal Jurisdiction

This Court possesses personal jurisdiction over Defendant Doris Dupree-Roberts. The

Franchise Agreement includes a clause by which Defendant consented to personal jurisdiction in

"the United States District Court nearest to [Jackson Hewitt's] principal place of business,

(presently the District of New Jersey, Newark Division)." The Defendant was personally bound

by this clause. Compl. ¶ 4. And Plaintiff Jackson Hewitt complied with the requirements for

proper service of process necessary to establish personal jurisdiction. *Lampe v. Xouth, Inc.*, 952

F.2d 697, 700–01 (3d Cir. 1991). Dupree-Roberts was served on March 21, 2013 under Fed. R.

Civ. P. 4(h) by certified and regular mail, return receipt requested. Aff. of Service, ECF No. 4.

## II.      Liability

Because a party seeking a default judgment is not entitled to such relief as a matter of

right, the court may enter a default judgment "only if the plaintiff's factual allegations establish

the right to the requested relief." *Nautilus Ins. Co. v. Triple C. Const. Inc.*, No. 10–2164, 2011

WL 42889, at *4 (D.N.J. Jan. 6, 2011).

Jackson-Hewitt brings five breach of contract claims against Dupree-Roberts, including:

1) breach of the covenant not to compete; 2) unpaid fees; 3) breach of the promissory note; 4)

unjust enrichment; and 5) breach of the guarantees. Compl. ¶¶ 68 – 95.

To properly make out a breach of contract claim, Plaintiff must allege: (1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach. *Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985).

### A.  Breach Of The Franchise Agreement, Promissory Note, and Guarantees

On or about December 30, 1999, Plaintiff entered into two Franchise Agreements with Dupree-Roberts for the operation of Jackson Hewitt income tax preparation businesses for a 10-year term within a defined geographic area designated by five zip codes in Texas, which Dupree-Roberts personally guaranteed. Compl. ¶¶ 20, 27. There is no evidence these Franchise Agreements are invalid. Indeed, Dupree-Roberts successfully operated under the terms of the Franchise Agreements for 10 years before renewing both Franchise Agreements for additional 10 year term. *Id*. ¶ 27.  Dupree-Roberts again personally guaranteed these renewed obligations on February 9, 2010. *Id*. ¶¶ 23, 30. On January 8, 2010, Jackson Hewitt issued a promissory note in favor of Dupree-Roberts. *Id*. ¶ 35. According to the terms of the promissory note, all unpaid balances would immediately become due to Jackson Hewitt upon termination of the Franchise Agreements. *Id*. ¶ 36.

Dupree-Roberts breached the Franchise Agreements with Jackson Hewitt because on or about September 10, 2010, Dupree-Roberts failed to meet performance standards resulting in Jackson Hewitt terminating the first Franchise Agreement TX 228. *Id*. ¶ 31. On September 23, 2011, Jackson Hewitt terminated the second Franchise Agreement, TX 224, because Dupree-Roberts failed to make payments pursuant to the terms of the Franchise Agreement and promissory note. *Id*. ¶ 45. Following termination of the agreements, Jackson Hewitt alleges Dupree-Roberts failed to meet her post-termination obligations in accordance with the agreement, guaranty and promissory note. *Id*. ¶¶ 57-58, 62-64.

Jackson Hewitt alleges money damages under the Franchise Agreement, guarantees and promissory note amounting to $158, 958.47. Mot. to Dismiss, 6.

Plaintiff has established liability for breach of the Franchise Agreement, personal guarantees, and promissory note. Plaintiff has abandoned its unjust enrichment claim in its motion for default judgment.

### B.  Breach Of The Covenant Not To Compete

Under paragraph 18.2 of the Franchise Agreements, Dupree-Roberts agreed:

> For a period of twenty-four (24) months after the earlier of (1) the effective date of termination for any reason, or (2) the expiration of this Agreement . . . you may not directly or indirectly prepare or electronically file individual income tax returns, teach tax courses, offer Bank Products or own, engage in, operate, manage, purchase, invest in (except to purchase stock in a publicly traded company listed on a national stock exchange), franchise, lend money to, lease or sublease to, or agree to sell or sell all or a majority of the assets of the Franchised Business to any Competing Tax Business as defined herein, within the Territory or within an area ten (10) miles outside the boundaries of the Territory.

Mot. for Default J. Ex. 2 ¶¶ 15.

Covenants not to compete "are enforceable only insofar as they are reasonable under the circumstances." *Solari Industries v. Malady,* 55 N.J. 571, 585 (1970).  In the case of a covenant relating to a former employee, reasonableness is governed by a three-part standard: "(1) it must protect a legitimate interest of the employer; (2) it may impose no undue hardship on the employee; and (3) it must not impair the public interest." *Id.* And "[e]ven if the covenant is found to be enforceable, it may be limited in its application concerning its geographical area, period of enforceability, or its scope of activity—the so-called 'blue pencil rule.'" *Id.* In the case of covenants not to compete negotiated in the sale of business, New Jersey courts "give wider

latitude to covenants not to compete that are ancillary to the sale of a business than in the employment context." *Coskey's T.V. & Radio Sales v. Foti*, 253 N.J. Super. 626, 633 (N.J. App. Div. 1992).

New Jersey courts have not yet decided whether covenants not to compete found in the franchise context are closer to employee covenants or agreements ancillary to the sale of business. One federal district court "predict[ed] the New Jersey Supreme court would rule the covenants not to compete in franchise agreements are closer to agreements ancillary to the sale of business" and evaluated the franchise covenant under the more lenient standard. *Jiffy Lube Intern., Inc. v. Weiss Bros., Inc.*, 834 F. Supp. 683, 691 (D.N.J. 1993).

Regardless, even under the more stringent standard, the covenant not to compete found in the Franchise Agreement is reasonable. First, the covenant protects a legitimate interest of the franchise to "provide Jackson Hewitt the opportunity to transfer customers to new or existing Jackson Hewitt franchisees." Compl. ¶ 54. These customers were retained under the Jackson Hewitt brand using Jackson Hewitt methods. Jackson Hewitt is entitled to try and retain them. Second, the covenant is not overly burdensome to Dupree-Roberts. Under paragraph 18.7 of Franchise Agreement TX 224, Dupree-Roberts acknowledged she had "other skills, experience or education that will afford [her] the opportunity to derive income from other endeavors." Franchise Agreement ¶ 18.7. What is more, the covenant is geographically restricted to five zip codes plus a ten mile radius and limited to only two years. *See, e.g., A.T. Hudson & Co. v. Donovan*, 216 N.J. Super. 425, 426 (N.J. Super. 1987) (upholding a two year restrictive covenant); *Transamerican Trucking Serv., Inc. v. Ruane*, 273 N.J. Super. 130, 133 (App. Div. 1994) (same). Finally, the public interest would not suffer from the enforcement of the covenant

not to compete given the multiplicity of tax preparation services available. This limited and circumscribed covenant is valid and enforceable.

Third, Dupree-Roberts is in breach of the covenant not to compete because she is currently operating a Competing Tax Business under the name "Roberts Insurance and Tax Agency" at a former Jackson Hewitt franchise location 1100 Fondren Road, Suite C, Houston, TX 77096. Compl. ¶ 58. On or about February 3, 2012, Jackson Hewitt sent Dupree-Roberts a cease and desist letter advising her she was in violation of her post-termination obligations under the TX224 Franchise Agreement, which Dupree-Roberts ignored. *Id.* ¶ 59.

Finally, Jackson Hewitt alleges irreparable harm from Dupree-Roberts' continued operation of a competing business. *Id.* ¶¶ 60, 76; Decl. of Arnold Janofsky in Supp. of Mot. for Default J. ¶¶ 31. Plaintiff argues Dupree-Roberts' "failure to comply with her covenant not to compete hinders Jackson Hewitt's ability to provide tax preparation services to existing clients and threatens to destroy Jackson Hewitt's relations with its customers in Defendant's former territories under the Franchise Agreements" and seeks to enjoin defendants from operating a competing tax business in her former franchise territory. Compl. ¶ 60.

Plaintiff has adequately established liability for breach of the covenant.

III.     **Propriety of Entry of Default Judgment**

Plaintiff has properly served Defendant with process, the Clerk of the Court has entered default against her, and Plaintiff has established legitimate causes of action for breach of contract and grounds for injunctive relief. The Court now determines whether default judgment is appropriate by evaluating: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

If a default judgment is not entered, Plaintiff will continue to be harmed "because [it] will not be able to seek damages for [its] injuries due to defendant's continuing refusal to participate in this case." *Newman v. Axiom Worldwide*, No. 06–5564, 2010 WL 2265227, at \*5 (D.N.J. June 2, 2010). Furthermore, the amounts owed on the recurring fees are subject to interest. Defendant will owe Plaintiff more money the longer Plaintiff does not receive payment, causing additional harm. *See Howard Johnson*, 2011 WL 2148575, at \*4.

Defendant has been unresponsive to this action. Defendant has offered no defense, and the facts asserted in the Complaint do not contain any information that could provide the basis for a meritorious defense. The Court assumes that the Defendant has no litigable defenses available. *Rose Containerline, Inc. v. Omega Shipping Co.*, No. 10–4345, 2011 WL 1564637, at \*3 (D.N.J. Apr. 25, 2011) (citing *Carpenters Health & Welfare Fund of Phila. v. NDK Gen. Contractors, Inc.*, No. 06–3238, 2007 WL 1018227, at \* 5 (E.D. Pa. Mar. 27, 2009) (finding that because defendant had filed no responsive pleading to the plaintiff's complaint, and the record did not indicate any litigable defense, the court must presume the defendant had none)).

The Third Circuit has defined culpable conduct as "conduct that is taken willfully or in bad faith." *Hill v. Williamsport Police Dept.*, 69 F. App'x 49, 52 (3d Cir. 2003) (quotations omitted). "Reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (citation omitted). Here, Dupree-Roberts has disregarded all communications from Plaintiff. Nor does the record suggest any good faith justification for her failure to respond. There is no evidence before the Court "that defendants' failure to respond to plaintiff's complaint was caused by anything other than defendants' own culpability and willful negligence." *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08–2662,

2009 WL 2147843, at *5 (D.N.J. July 15, 2009). The Court presumes that the Defendant acted culpably because she has "failed to answer, move, or otherwise respond." *Stonebridge Bank v. Nita Props., LLC*, No. 09–5145, 2011 WL 380759, at *6 (D.N.J. Jan. 31, 2011).

## IV.      Damages And Other Relief

Plaintiff seeks "damages for Dupree-Roberts' wrongful conduct", "an injunction enforcing the post-termination obligations set forth in the franchise agreements", "as well as attorneys' fees and costs." Mot. for Default, 2.

### A.      Money Damages

The only allegations in a Complaint not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Under Federal Rule of Civil Procedure 55(b)(2), a district court "may conduct such hearing or order such references as it deems necessary and proper" in order "to determine the amount of damages." If the damages are for a "sum certain or for a sum which can by computation be made certain," further evidentiary inquiry is not necessary. Fed.R.Civ.P. 55(b)(1); *Comdyne I*, 908 F.2d at 1149.

Plaintiff now requests default judgment awarding money damages under the terms of her Franchise Agreement and promissory note. This request is supported by Exhibit 7 attached to the Plaintiff's Motion for Default, which itemizes past due royalty fees, advertising and marketing fees, electronic filing fees, rents, and outstanding billed promissory notes balances totaling a principle of $123,084.77. Mot. For Default, Ex. 7. Per section 8.4 of the Franchise Agreement, Plaintiff is also entitled to prejudgment interest accruing daily with respect to past due fees and promissory note balances at a contractually agreed upon rate of 18% per year. *Id.* Ex. 1; 2. As of the date of Plaintiff's Motion for Default Judgment, May 10, 2013, interest had accrued in the

amount of $35,873.70 and continues to accrue. Decl. of Arnold Janofsky in Supp. of Mot. for

Default J. ¶ 33. Combination of the outstanding balance and the accrued interest totals Plaintiffs

requested sum of $158,958.47. Jackson Hewitt is entitled to a judgment of $158,958.47 plus

post-judgment interest.

### B.      Injunctive Relief

The Franchise Agreements provide that upon violation of the covenants, Jackson Hewitt

is "entitled to preliminary and permanent injunctive relief and all monies and other consideration

you received as a result of any violation of these covenants, as well as all other damages."

Franchise Agreement ¶ 20.18. These post-termination obligations include various contractual

obligations to return property following the termination of the Franchise Agreements as well as

Dupree-Roberts' obligation to comply with her covenant not to compete. Franchise Agreement,

¶¶ 20.3 (b)-(g) 18.2.

"The allowance of injunctive relief is a discretionary matter in that the court may be

called upon to give or withhold relief depending upon variables, namely, the circumstances of

the case." *Gilpin v. Jacob Ellis Realties, Inc.*, 47 N.J. Super. 26, 29 (App. Div. 1957).

There are several factors that must be weighed in determining whether to grant

permanent injunctive relief: (1) the character of the interest to be protected; (2) the relative

adequacy of the injunction to the plaintiff as compared with other remedies; (3) the unreasonable

delay in bringing suit; (4) any related misconduct by plaintiff; (5) the comparison of hardship to

plaintiff if relief is denied, and hardship to defendant if relief is granted; (6) the interests of

others, including the public; and (7) the practicality of framing the order or judgment. *Sheppard*

*v. Township of Frankford*, 261 N.J. Super. 5 (App. Div. 1992). Additionally, the moving party

must show its "legal right to such relief has been established and that the injunction is necessary

to prevent a continuing, irreparable injury." *Verna v. Links at Valleybrook Neighborhood Ass'n*,

371 N.J. Super. 77, 89 (App. Div. 2004) (citing *McCullough v. Hartpence*, 141 N.J. Eq. 499, 502

(Ch. 1948)).

### 1.   Various Post-Termination Obligations

Jackson Hewitt seeks "a permanent injunction enforcing the post-termination obligations

detailed in the franchise agreements." *Id.* The Franchise Agreements contain a clause which

entitles Jackson Hewitt to:

> temporary and permanent injunctions . . . to enforce our exclusive
> rights in our Marks, to enforce your post-termination or expiration
> obligations, to prevent an unauthorized assignment or transfers of
> your franchise, to prevent the unauthorized use or disclosure of our
> trade secret, propriety or confidential information, and to prohibit
> any act or omission by you or your employees that constitutes a
> violation of any law or regulation, is dishonest or misleading to
> any current or prospective customers of the Franchised Business,
> constitutes a danger to any other Franchisees, employees,
> customers, or to the public, or that may impair the goodwill of our
> Marks.

Franchise Agreement ¶ 28.14.

Paragraph 20.3(b)(c);(e)-(h) of the Franchise Agreements outlines Dupree-Roberts' post-

termination obligations to:

(b) return to Jackson Hewitt all originals and copies of all trade secret and confidential

Jackson Hewitt information and client files, without retaining copies, and all collateral

agreements;

(c) delete all confidential materials and client files from her computers and hard drives;

. . .

(e) notify the telephone company and all listings agencies and advertising directories for the territories that Defendant no longer has the right to use such telephone numbers and listings, and authorizing the transfer of same to Jackson Hewitt;

(f) return to Jackson Hewitt all leased equipment from any leasing program Jackson Hewitt arranges or sponsors;

(g) return to Jackson Hewitt or destroy all literature, sign facings and unused advertising materials bearing the Jackson Hewitt Marks; and

(h) immediately cease identifying herself as a present or former Jackson Hewitt franchisee or franchise owner.

Franchise Agreement 20.3(a)-(j); Compl. ¶ 50.

Weighing these factors reveals that permanent injunctive relief is appropriate. Jackson Hewitt has expended substantial resources building its brand and the products associated with that brand. Dupree-Roberts is no longer operating a Jackson Hewitt franchise, and is no longer entitled to the above property or rights. Dupree-Roberts is enjoined to honor these post-termination obligations, will refrain from referring to herself as a former Jackson Hewitt franchise, and will return to Jackson Hewitt all outstanding property.

### 2.  Covenant Not To Compete

Plaintiff now seeks injunctive relief with respect to Defendant's failure to comply with the covenant not to compete found in the Franchise Agreements. Jackson Hewitt requests:

> a preliminary and permanent injunction enjoining Defendant and her employees, agents, servants, representatives, attorneys and/or affiliates, and all those who act in concert or participation with her from preparing or electronically filing individual tax returns, offering Financial Products, or participating in any way in a Competing Tax business within each territory under the TX 224 Franchise, Agreement, and within ten miles of the boundaries of each territory under the TX 224 Franchise Agreement, until two

-14-

years from the date of this Court's Order.

This Court will grant Jackson Hewitt's requested injunction. The purpose of a restrictive covenant is to provide the Plaintiff with the opportunity to transfer customers to new or existing Jackson Hewitt franchisees. Dupree-Roberts obtained clients through the Jackson Hewitt brand, and then transferred them to a comparable business at the same location. This was expressly forbidden from the terms of the agreed Franchise Agreement. Any hardship to Dupree-Roberts was part of the basis of the bargain. Pursuant to paragraph 18.6, Dupree-Roberts acknowledged Jackson Hewitt is entitled to permanent injunctive relief in the event of her violation of the covenants in section 18.2. Dupree-Roberts also acknowledged in paragraph 18.7 that the covenant not to compete was necessary to protect the Plaintiff and the restrictions would not impose any undue hardship. Jackson Hewitt terminated the Franchise Agreements on September 23, 2011, nearly two years from the present date. If Dupree-Roberts had complied with the covenant she would have been able to open her own tax related business soon. However, Jackson Hewitt is now entitled to try and retain customers obtained by its good name.

Dupree-Roberts is enjoined from operating a Competing Tax Business at the following former Jackson Hewitt franchise location: 11001 Fondren Road, Suite C, Houston, TX 77096 or otherwise within ten miles of the boundaries of Franchise Agreement TX 224 for a period of two years from the date of this Court's order.

### C.  Attorney's Fees And Costs

Under Paragraph 28.18 of the Franchise Agreements, Dupree-Roberts agreed "the non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce [the] Agreement or any Collateral Agreement[s]." Franchise Agreement ¶ 28.18; Compl. ¶ 65. Attorneys' fees clauses are enforceable under New Jersey law.

*See North Bergen Rex Transport, Inc. v. Trailer Leasing Co.*, 158 N.J. 561 (N.J. 1999). Federal Rule of Civil Procedure 54 further provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1). Plaintiff's request for $2,997.00 in attorneys' fees and $350.90 in costs will be granted based on the review of supporting documentation detailing these costs. Certification of John F. Dienelt, Esq. in Supp. of Mot. For Default J. ¶¶ 3, 5, 8.

## CONCLUSION

Plaintiff's motion for default judgment is granted. Judgment is entered in the amount of $162,306.37 plus post-judgment interest. Defendant must comply with her Franchise Agreement post-termination obligations as detailed in this Court's accompanying order, and is enjoined from operating a Competing Tax Business within the geographic boundaries described in Franchise Agreement TX 224.

August 7, 2013

**s/ William H. Walls**
United States Senior District Judge
